UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANGEL MARIE C.,

                      Plaintiff,                      6:20-CV-7113Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #8.

## BACKGROUND

Plaintiff applied for supplemental social security income ("SSI"), with the Social Security Administration ("SSA"), on October 18, 2017, at the age of 41, alleging disability beginning November 1, 2004, at the age of 28, due to bipolar disorder, panic disorder, anxiety, manic depression, sciatica and arthritis. Dkt. #5, p.107.

On October 3, 2019, plaintiff appeared with counsel and testified at an administrative hearing by video before Administrative Law Judge ("ALJ"), Arthur Patane.

Dkt. #5, pp.86-106. Plaintiff testified that she possessed a GED but had never worked. Dkt. #5, p.89. She had been sober from opiates for ten years and had used marijuana recently because her back was hurting. Dkt. #5, p.90. Plaintiff lived with her four children, ages 12, 13, 15 and 17. Dkt. #5, p.89. She shops for groceries, cooks, and does laundry at the laundromat; her children clean the home. Dkt. #5, pp.91-92. Plaintiff does not drive because of her anxiety and panic attacks. Dkt. #5, p.92.

Plaintiff explained that she had been diagnosed bipolar and experienced a manic episode approximately three weeks prior where she could not sleep at all for three days. Dkt. #5, p.94. She also described "feeling worthless, like nothing is gonna ever be better" and "[w]orrying that I'm not a good enough parent to my children." Dkt. #5, p.94. She testified that her anxiety keeps her from leaving the house and described daily anxiety attacks where her "heart starts jumping" and she gets upset at loud noises, like her dog barking or her children playing. Dkt. #5, pp.94-95. Plaintiff described going to the grocery store as "the worst" and expressed difficulty getting along with people, acknowledging that she engaged in verbal fights with people while shopping. Dkt. #5, pp.95-97.

Plaintiff described difficulty lifting grocery bags and laundry or sitting and standing for long periods because of arthritis in her back. Dkt. #5, pp.97-98. She has difficulty climbing stairs, walking more than three blocks and standing more than 45 minutes. Dkt. #5, pp.102-103. Her vision was blurry, but she had not seen an eye doctor because she doesn't want to go places. Dkt. #5, p.104. She also experiences migraines every couple of weeks that last 2-3 days. Dkt. #5, p.105.

The ALJ rendered a decision that plaintiff was not disabled on December 18, 2019. Dkt. #5, pp.72-81. The Appeals Council denied review on October 27, 2020. Dkt. #5, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 22, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of October 18, 2017; (2) plaintiff's anxiety disorder, bipolar disorder, and polysubstance use disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels with the following limitations: simple tasks associated with unskilled to semi-skilled work; no fast-paced production rate, and

no more than frequent interaction with supervisors, coworkers, and the public; and (5) plaintiff had no past relevant work but was capable of performing unskilled work on a sustained basis and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.74-81.

Plaintiff argues that the ALJ improperly assessed her credibility by holding her lack of work history against her and relying upon her ability to complete forms and activities of daily living. Dkt. #6-1, pp.25-26. Specifically, plaintiff argues that it is obvious from the record that she was overwhelmed by the needs of her children and other situational stressors. Dkt. #6-1, pp.26-27. Plaintiff also argues that the ALJ erroneously assumed a common definition of moderate limitation which minimized the severity of  mental impairments identified by the consultative psychologist. Dkt. #6-1.

The Commissioner argues that the ALJ properly considered plaintiff's subjective complaints of disabling anxiety and found them inconsistent with her activities of daily living. Dkt. #7-1. The Commissioner argues that the ALJ properly evaluated Dr. Brownfield's opinion in determining plaintiff's RFC and appropriately limited plaintiff to unskilled work in light of his assessment of moderate limitations in regulating emotions, controlling behavior and maintaining well-being. Dkt. #7-1.

Because an ALJ is best-positioned to make accurate credibility determinations, credibility findings by an ALJ are entitled to great deference and will be reversed only if they are patently unreasonable. *Kelly S. v. Comm'r of Soc. Sec.*, __ F. Supp.3d __, 2022 WL 17330779, at *3 (W.D.N.Y. Nov. 30, 2022). To assess the

credibility of a plaintiff, the ALJ must first determine whether the plaintiff suffers from a medically determinable impairment that could reasonably be expected to produce her symptoms. *Id.* The ALJ must then evaluate the intensity and persistence of those symptoms based upon consideration of all of the available evidence and engage in a credibility inquiry with respect to subjective contentions that are not substantiated by the objective medical evidence. *Id.* It is well established that an ALJ may consider activities of daily living in assessing credibility. *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp.3d 427, 436 (W.D.N.Y. 2018). When considering such activities of daily living, the issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *Id.* This is so because one strong indication of credibility is the consistency of a plaintiff's statements both internally and with other information in the record. *Id.* A plaintiff's subjective complaints may be deemed less credible if the level or frequency of treatment is inconsistent with the intensity of plaintiff's complaints. *Id.*

In the instant case, the ALJ concluded that plaintiff's mental and substance use disorders were "medically determinable and severe to the extent that they cause more than minimal work-related limitations, but the evidentiary record as a whole is consistent with the residual functional capacity set forth above and inconsistent with the degree of limitation alleged." Dkt. #5, p.77. In reaching this conclusion, the ALJ determined that plaintiff's credibility could not receive the benefit of a favorable work ethic inference because she had no history of performing substantial gainful activity.

Dkt. #5, p.77. The ALJ also noted that plaintiff was able to complete lengthy and detailed paperwork associated with her application for disability benefits independently. Dkt. #5, p.77. The ALJ emphasized that plaintiff acknowledged activities of daily living that are higher functioning than would be expected for her allegations of disability, particularly noting plaintiff's "ability to maintain her grooming and self care, perform childcare for her 5 children (itself a physically and mentally demanding task), care for a pet dog, cook and prepare meals, clean, do laundry, manage money, go shopping in public (she reports that she gets in and out quickly), take public transportation, and attend appointments." Dkt. #5, p.77. Most importantly, the ALJ noted that none of plaintiff's treatment notes suggested restrictions that would contradict the ALJ's assessment of plaintiff's mental RFC. Dkt. #5, p.77. The ALJ acknowledged multiple situational stressors impacting plaintiff's mental health, but determined such stressors were unlikely to persist and noted consistently normal clinical findings on mental status examination despite such stressors. Dkt. #5, pp.77-78.

The ALJ relied upon the consultative psychiatric examination of plaintiff by Adam Brownfield, Ph.D. Dkt. #5, p.78. Plaintiff reported "sad moods, loss of usual interest, diminished sense of pleasure, social withdrawal, and lack of appetite," but advised that she was "able to dress, bathe, and groom herself;" "cook and prepare food, clean, do laundry, shop, manage money, and take public transportation." Dkt. #5, pp.507 & 509.[1] Dr. Brownfield reported that plaintiff had "inflated self-esteem,

---

[1] At her physical consultative examination on the same date, plaintiff reported that "[s]he cooks four times a week, cleans three times a week, does laundry one time a week, and shops one time a week." Dkt. #5, p.509.

decreased need for sleep, and expansive moods with excessive worrying." Dkt. #5, p.507. He observed appropriate grooming, normal eye contact, adequate expressive and receptive language, coherent and goal-directed thought processes, full range and appropriate affect, intact attention and concentration, intact recent and remote memory skills and good insight and judgment. Dkt. #5, pp.508-509. Dr. Brownfield opined that

> There is no evidence of limitation in understanding, remembering, and applying simple and complex directions and instructions, using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and appropriate attire, and awareness of normal hazards and taking precautions. She is moderately limited in regulating emotions, controlling behavior, and maintaining well-being.

Dkt. #5, p.509. Dr. Brownfield opined that "[t]he results of the evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the [plaintiff's] ability to function on a daily basis." Dkt. #5, p.509.

The ALJ found Dr. Brownfield's opinion persuasive as it was consistent with the medical evidence of record and uncontradicted by any other medical source opinion. Dkt. #5, p.79. The ALJ noted that, according to SSA regulations, "an individual with a moderate limitation for a particular mental activity nevertheless retains a fair ability to perform the activity independently, appropriately, and on a sustained basis." Dkt. #5, p.78.  In reaching his decision as to plaintiff's mental RFC, the ALJ noted that he had

> carefully considered the [plaintiff's] own reports and allegations, which are partially, though not entirely, consistent with the medical evidence of record. Certainly, the [plaintiff] has a well-documented history of treatment for mental health issues that impose some significant limitations in her ability to perform work. However, to the extent that she asserts that these limitations have prevented her from performing any type of substantial gainful activity on a sustained, consistent basis, her allegations are undermined by her acknowledged and high functioning activities of daily living, inconsistent with the clinical and treatment evidence . . . and universally contradicted by the medical opinion evidence of record.

Dkt. #5, p.79.

The ALJ's assessment of plaintiff's credibility is reasonable and supported by the record of evidence. For example, the ALJ's consideration of plaintiff's capacity to complete disability forms, while perhaps of limited significance on its own, is also consistent with plaintiff's ability to attend appointments necessary to continue Suboxone therapy; ability to identify health care providers and self-refer for mental health treatment as plaintiff deemed necessary; and ability to advocate for transportation to medical appointments. Dkt. #5, pp.27, 649, 651, 735-736. Moreover, the Court agrees that plaintiff's generally unremarkable mental status examinations despite multiple situational stressors undermines any suggestion that plaintiff lacks the mental RFC to withstand the stress of simple, unskilled work. The Court also notes that, in addition to plaintiff's demeanor with Dr. Brownfield on December 7, 2017, treatment records indicate that plaintiff denied feeling anxious and was observed to have a normal mood and affect, with normal thought content and judgment when she presented to University of Rochester Medical Center for a dental issue on October 26, 2018, and that she

denied mental health concerns on April 26, 2019 and reported that she "continues to do well in the midst [of] the never-ending chaos in her family" on May 22, 2019. Dkt. #5, pp.614-615, 813 & 818. Dr. Brownfield's opinion of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is adequately addressed by the ALJ's mental RFC limiting plaintiff to simple, unskilled work without production rate. *See Sarah R. v. Kijakazi*, 20-CV-6739, 2022 WL 2704528, at *3 (W.D.N.Y. July 12, 2022) ("individual with moderate mental limitations can generally perform the functional requirements of unskilled work").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #7), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
            **March 27, 2023**

                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**